**Thornton Lee HANDLEY**

v.

**Jerry PITTS, Sheriff, Hamilton County, Tennessee.**

**No. CIV-1-78-91.**

United States District Court,
E. D. Tennessee, S. D.

Aug. 22, 1978.

Jerry H. Summers, Chattanooga, Tenn., for petitioner.

Henry E. Hildebrand, III, Asst. Atty. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM OPINION

FRANK W. WILSON, Chief Judge.

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner seeks to have his conviction and sentence set aside in the criminal case of *State of Tennessee v. Thornton Lee Handley*, Docket No. 133,059 in the Criminal Court for Hamilton County. The petitioner was convicted by a jury upon the charge of first degree murder and received a sentence of one hundred years and one day.

The petitioner raises the following grounds to support his petition for a writ of habeas corpus:

1. The petitioner was deprived of his constitutional rights of due process when the trial court permitted the State to introduce evidence tending to show that the petitioner had a sexual relationship with his step-daughter [the victim].

2. The petitioner was deprived of his constitutional rights of due process when the District Attorney asked a question tending to show a sexual relationship between the petitioner and the victim's sister.

3. The petitioner was denied his constitutional rights of due process when the trial court permitted the State's attorney to cross examine a defense witness as to whether that witness at one time had believed the petitioner to be guilty.

These issues are now before the Court on the petition for habeas corpus, the answer of the respondent, the transcript of the trial, petitioner's briefs on his direct appeal to the Court of Criminal Appeals of Tennessee, and to the Supreme Court of Tennessee, the opinion of the Court of Criminal Appeals, and the per curiam order of the Supreme Court of Tennessee. The petitioner's claims were presented to the Tennessee appellate courts in his direct appeal to the Court of Criminal Appeals of Tennessee and his petition for a writ of certiorari to the Supreme Court of Tennessee. The petitioner having exhausted his State court remedies, this Court will address the issues raised in the petition.

The petitioner was prosecuted for first degree murder of his step-daughter, Robyn Sue Leigh Handley; the testimony showing that she was beaten to death at a trailer where she lived with her three month old son, her sister (Deborah Handley), and the petitioner.

The evidence presented against the petitioner at trial was largely circumstantial. The proof showed that at approximately 2:00 a. m. on Saturday, March 6, 1976, neighbors of the petitioner were awakened and told by petitioner that someone had killed his daughter. When one of the neighbors came to the petitioner's trailer,

he found the petitioner in the back bedroom, clothed in shorts and holding the body of the victim, saying, "Oh, Sue, who could have done this?" When police officers arrived, the petitioner was still holding the victim in his lap, saying, "Sue, I loved you. Who would want to do something like this to you?"

The investigating officers testified that the back bedroom of the trailer was splattered with blood and that a wooden candle holder, smeared with blood and hair, was on the bed. The officers further testified that the victim had several marks on her body and was clutching hairs in her hand. An autopsy showed that the victim's death was caused from loss of blood and strangulation. The autopsy further showed that the victim was intoxicated and had not had sexual intercourse.

The investigating officers testified that the petitioner had scratches and other marks on his body, including what appeared to the officers to be an injured hand and a spot where hair had been removed from the petitioner's head. However, the nature and the extent of the marks on the petitioner's body was hotly contested with rebuttal testimony presented by the defense.

The petitioner testified on his own behalf, stating that he fell asleep on a couch in the front part of the trailer on the night of the murder. He testified that he was awakened by the crying of the baby and walked to the back bedroom. He stated he was struck on the head and knocked down, but did not see his assailant. He further testified that when he came to, he saw the victim pinned between the bed and the wall of the trailer in the back bedroom and called for help.

The testimony at trial was that the petitioner and his step-daughters moved into the trailer on Monday, March 1. Deborah Handley testified that she and her sister had slept with the petitioner in the back bedroom on Monday through Thursday night and that she had left the trailer to spend the night with a friend on Friday night, March 5. The petitioner admitted that he had slept with his step-daughters on Monday and Tuesday because it was cold in the trailer. However, he denied that he slept with his step-daughters on any other nights during the week prior to the murder. The petitioner's alleged sexual relationships with his step-daughters was a point of contention at trial.

The petitioner first contends that his constitutional rights were violated when the trial court allowed the prosecution to introduce testimony making reference to an alleged sexual relationship between the petitioner and the victim. The prosecution contended that questions regarding a possible sexual relationship between petitioner and victim were relevant to show motive and further that such testimony would tend to support an inference that the petitioner was in the victim's bedroom when she was killed and not on the couch in the front part of the trailer, as contended by petitioner. On the other hand, petitioner argues that since the autopsy showed that the victim had not had sexual intercourse on the night of her murder, such questioning was irrelevant and prejudicial. The Tennessee Court of Appeals agreed with the prosecution, holding that the questions were relevant to the issue of motive and petitioner's defense.

In considering a petition for habeas corpus filed on behalf of a state prisoner, a federal court does not sit as a state appellate court passing upon trial errors in general and a trial court's ruling as to the admissibility of evidence does not present a cognizable federal habeas corpus issue unless the alleged practice is so gross as to amount to a denial of due process. *Taylor v. Minnesota*, 466 F.2d 1119 (8th Cir., 1972); *Buchanan v. Wainwright*, 474 F.2d 1006 (5th Cir., 1973). A constitutional question is not raised unless the admission of evidence was so gross an error as to "impugn fundamental fairness", *Maglaya v. Buchkoe*, 515 F.2d 265 (6th Cir., 1975).

Before habeas corpus relief can be granted, this Court would first be compelled to find that the evidence was irrelevant and prejudicial. Whether the line of questioning was irrelevant is fairly debatable. Cer-

**600**

tainly, the admission of the evidence in question would not be error so gross as to amount to a denial of due process.[1] The questions concerning sexual advances of the petitioner toward the victim would be relevant to the issue of motive (supporting an inference that the victim was killed when she refused the petitioner's advances) and credibility of petitioner's defense (supporting an inference that petitioner was in the victim's bedroom and not asleep on the couch in another part of the trailer). The Court being of the opinion that the admission of the evidence was not clearly erroneous under state law, it follows that no constitutional error is shown. See *Bishop v. Wainwright*, 511 F.2d 664 (5th Cir., 1975).

██ The second ground raised by the petitioner for relief involves an allegation that the petitioner's constitutional rights were violated when the prosecution asked the victim's sister, Deborah Handley, about a possible sexual relationship between her and the petitioner. The record shows that objection was made to this line of questioning and sustained by the Court. Although the admissibility of such questioning would appear to this Court to be questionable, it cannot be said that such questioning was so unfair as to amount as to a denial of due process, especially in view of the trial court's action in sustaining objections to the questions. *Manning v. Rose*, 507 F.2d 889 (6th Cir., 1974). Further, this Court's conclusion that the interjection of a possible sexual relationship between the petitioner and the victim's sister did not impugn fundamental fairness is buttressed by the fact that, as noted above, evidence of a possible sexual relationship between the petitioner and the victim was not erroneous.

The third ground raised in support of the petition claims that the trial court erred in permitting the prosecution to cross examine a defense witness as to whether that witness at one time had believed the petitioner to be guilty.

At trial, Sharon Henderson testified concerning the petitioner's character. She testified that petitioner had a good reputation for truth and veracity, and that, in her opinion, the victim and the petitioner had a good relationship. On cross-examination, she admitted that she had made an earlier statement that she thought the petitioner was the type of person who would kill, and in fact, did kill the victim. Petitioner contends that allowance of such cross-examination was prejudicial.

██ As noted, admissibility of evidence is a question for the trial judge in the State courts and does not normally rise to constitutional magnitude. *Manning v. Rose, supra; Anderson v. Maggio*, 555 F.2d 447 (5th Cir., 1977). This Court agrees with the state court finding that it was not error to allow the impeachment of a witness by use of prior inconsistent statements. The witness, having testified that in her opinion the petitioner had a good reputation and a good relationship with the victim, was subject to cross-examination by use of prior statements tending to contradict her opinion testimony. The third ground raised by the petitioner fails to support the petition for habeas corpus relief.

Having thus considered petitioner's allegations in support of his petition for writ of habeas corpus and found the same to be without merit, and it appearing that the petitioner has failed to present any genuine issue of material fact, a judgment of dismissal will enter dismissing the petition for writ of habeas corpus.

---

1. Evidence of other crimes, wrongs, or acts may be admissible to prove motive. See Rule 404(b), *Federal Rules of Evidence*.